**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:16cv237**

| | | |
|---|---|---|
| **RICHIE PETTY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **BILLY BYERS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

Pending before the Court is the Defendants' Motion to Dismiss [# 8].

Plaintiff brought this action against Defendants asserting federal claims pursuant to

42 U.S.C. § 1983, as well as a number of state law claims. The claims all arise out

of a search and seizure during a traffic stop that led to Plaintiff's eventual arrest.

The Defendants move to dismiss the Amended Complaint in its entirety. Upon a

review of the record, the relevant legal authority, and the parties' pleadings, the

Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in**

**part** the Defendants' motion [# 8].

### I.     Background

### A.     The Acts Giving Rise to the Claims Asserted in the Amended Complaint

On June 7, 2013, Defendant Sergeant Rodney Fitch, an officer with the

Cleveland County Sheriff's Office, initiated a traffic stop of the vehicle Plaintiff was driving for allegedly failing to stop at a stop sign. (Pl.'s Am. Compl. ¶¶ 5, 19, ECF No. 2.) Plaintiff pulled his vehicle over without incident. (Id. ¶¶ 3, 20.) Sergeant Fitch then approached the vehicle, obtained Plaintiff's driver's license, and directed Plaintiff to move his vehicle to a nearby vacant lot. (Id. ¶ 20.) After Plaintiff moved his vehicle to the lot, Sergeant Fitch requested to see the vehicle's bill of sale paperwork. (Id. ¶ 21.) When Plaintiff was unable to produce a bill of sale, Sergeant Fitch instructed Plaintiff to step out of the vehicle and stand to the rear of Plaintiff's vehicle. (Id. ¶ 21.) Plaintiff complied with Sergeant Fitch's request and exited the vehicle. (Id.)

While Plaintiff was standing behind his vehicle and in front of Sergeant Fitch's vehicle, Defendant Billy Byers arrived on the scene to assist Sergeant Fitch. (Id. ¶ 22.) At the time of the incident giving rise to this lawsuit, Defendant Byers was an officer with the Cleveland County Sheriff's Office. (Id. ¶ 4.) Defendant Byers, however, is no longer employed by the Cleveland County Sheriff's Office. (Byers Decl. ¶ 1, ECF No. 8-5.)

Upon arriving on the scene, Defendant Byers parked his vehicle alongside the vehicle of Sergeant Fitch, a few feet behind Plaintiff's vehicle. (Id. ¶ 22.) Sergeant Fitch then instructed Defendant Byers to call the K-9 officer to the scene in case

Plaintiff did not consent to a search of his vehicle. (Id. ¶ 24.) Pursuant to Sergeant Fitch's request, Defendant Byers confirmed that the K-9 officer was on his way to the scene. (Id.) Sergeant Fitch then completed the checks of Plaintiff's license. (Id. ¶ 25)

During the traffic stop, Sergeant Fitch inquired about the address on Plaintiff's license, and Plaintiff explained that he had moved to a new address two years ago but had failed to change the address listed on his license with the Department of Motor Vehicles ("DMV"). (Id.) Sergeant Fitch then completed the warning citation for Plaintiff for a stop sign violation and for failure to notify the DMV of a change of address. (Id. ¶ 26.) Sergeant Fitch handed the citation to Plaintiff and returned his license. (Id.) Plaintiff contends that these actions terminated the traffic stop, and, thus, the officers could no longer detain Plaintiff on the scene based on the initial traffic infraction. (Id. ¶¶ 46-47, 49.)

Believing the traffic stop was concluded, Plaintiff attempted to return to his vehicle. (Id. ¶ 27.) As he was returning to his vehicle, Sergeant Fitch asked Plaintiff if there were any weapons, drugs, or large sums of money in the car; Plaintiff responded no. (Id.) Sergeant Fitch then asked for permission to search Plaintiff's vehicle. (Id. ¶ 28.) Plaintiff refused to consent to a search. (Id.)

After Plaintiff refused to consent to a search of the car, Sergeant Fitch asked

Plaintiff to stand with Defendant Byers in front of Byers's patrol car and explained that a K-9 officer was on his way to the scene. (Id. ¶ 29.) Plaintiff inquired as to whether he could place the citation in his car, but Sergeant Fitch denied the request. (Id. ¶ 30.) Plaintiff subsequently attempted to walk towards the rear of his own vehicle, but Sergeant Fitch instructed Plaintiff to return to Defendant Byers's vehicle. (Id. ¶¶ 31-32.) Plaintiff complied with Sergeant Fitch's instructions. (Id. ¶ 32.)

When Sergeant Fitch walked towards his patrol car to retrieve a cell phone, Plaintiff moved towards his vehicle and leaned into the driver's side window. (Id. ¶ 34.) While he was leaning through the window, Plaintiff retrieved a black bag located in the middle console area of the vehicle. (Id.) As he was leaning through the window to retrieve the bag, Sergeant Fitch grabbed Plaintiff from behind and attempted to pull Plaintiff out of the vehicle and wrestle him to the ground. (Id. ¶ 35.) As Plaintiff pulled away from the Sergeant Fitch's grasp, Sergeant Fitch pulled Plaintiff's shirt over Plaintiff's head. (Id.) Plaintiff did not strike Sergeant Fitch or make any aggressive movements towards either Sergeant Fitch or Defendant Byers. (Id. ¶ 36.)

Despite the fact that he did not see a weapon and Plaintiff was not acting in an aggressive manner towards Sergeant Fitch, Defendant Byers fired his pistol at

Plaintiff.  (Id. ¶¶ 37-39.)  Plaintiff did not in fact have a weapon on his person or in his vehicle at the time.  (Id. ¶¶ 43-44.)   Defendant Byers discharged his firearm with the intent of killing Plaintiff or inflicting serious injury on Plaintiff.  (Id. ¶ 39.) The bullet fired by Defendant Byers hit Plaintiff in the lower, left side of the abdomen, significantly injuring Plaintiff.  (Id. ¶ 41.) As a result of the injuries sustained from being shot by Defendant Byers, Plaintiff suffers from a permanent disability.  (Id. ¶ 41.)

**B.      The Legal Claims Asserted by Plaintiff in the Amended Complaint**

The Amended Complaint asserts a number of claims against Defendants. The first cause of action asserts a false imprisonment claim against Defendants Fitch and Byers.  The second cause of action asserts a claim for assault and battery against Defendants Fitch and Byers.  In addition, Plaintiff contends that Defendant Cleveland County Sheriff's Office is liable under the doctrine of *respondeat superior* and for the failure to establish a reasonable procedure to prevent the use of excessive force. The third cause of action asserts a willful negligence claim against Defendants Byers and Fitch.  Plaintiff also contends that Defendant Cleveland County Sheriff's Office is liable under the doctrine of *respondeat superior* and for the failure to establish a reasonable procedure to prevent the alleged negligent acts. The fourth cause of action asserts a negligence claim against Defendants Fitch,

Byers, and the Cleveland County Sheriff's Office. The fifth cause of action asserts a Section 1983 claim against Defendants Fitch and Byers. The sixth cause of action asserts, in the alternative, a substantive due process claim pursuant to the North Carolina Constitution. Plaintiff asserts this claim in the alternative in the event that the Court finds that Defendants are entitled to immunity from suit on the state law claims. The seventh cause of action asserts a claim for damages under N.C. Gen. Stat. § 162-50 against Defendants Byers, Fitch and the Sheriff of Cleveland County. Finally, the Amended Complaint asserts an action on the bond for the Sheriff of Cleveland County pursuant to N.C. Gen. Stat. §58-76-5.

## II. Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering Defendants' motion, the Court accepts the allegations in the Amended Complaint as true and construes them in the light most favorable to Plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The Amended Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127

S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

## III.    Analysis

### A. The Section 1983 Claims Asserted Against Sheriff Alan Norman

As a threshold matter, the Amended Complaint is devoid of any factual allegations that Sheriff Norman personally took any action against Plaintiff.  Rather, the Amended Complaint asserts claims against Sheriff Norman in his official capacity and as *respondeat superior* for the actions and omissions of Defendants Byers and Fitch.  (Pl.'s Am. Compl. ¶¶ 7-8.)  The Amended Complaint also asserts official capacity claims against Defendants Byers and Fitch.

For purposes of Section 1983, an official capacity suit is treated as one against the municipality.  Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469 (4th Cir. 2013).[1]   Municipal liability under Section 1983 cannot be based on respondeat superior.  Id. at 469-70.  Instead, a municipality is subject to Section 1983 liability only where the alleged unconstitutional act stems from an established municipal policy, practice, or custom.  Monell v. Dep't of Soc. Servs of City of New York, 436 U.S.658, 690, 98 S. Ct. 2018, 2035-36 (1978); Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 402 (4th Cir. 2014); Santos, 725 F.3d

---

1   The Section 1983 official capacity claims against Defendants Byers and Fitch are redundant of the official capacity claims against Sheriff Norman.  See Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985); Monell v. Dep't of Soc. Servs of City of New York, 436 U.S.658, 690, 98 S. Ct. 2018, 2035-36 (1978).

at 470. "Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the sine qua non of <u>Monell</u> liability." <u>Owens</u>, 767 F.3d at 402.

Fatal to Plaintiff's official capacity Section 1983 claims against Defendants is that the Amended Complaint fails to allege a policy, custom, or practice that resulted in a violation of Plaintiff's rights as guaranteed by the United States Constitution. Recognizing his failure to properly assert claims against Sheriff Norman in his official capacity under Section 1983, Plaintiff requests that the Court dismiss the claims without prejudice. Accordingly, the Court **RECOMMENDS** that the District **GRANT** the Motion to Dismiss and **DISMISS** the Section 1983 claims against Sheriff Norman and the official capacity Section 1983 claims against Defendants Byers and Fitch, without prejudice.

## B. Service of Process on Defendant Byers

 Prior to the exercise of personal jurisdiction over a defendant in federal court, the plaintiff must satisfy the procedural requirement of service of summons. <u>Omni Capital Int'l, Ltd., v. Rudolf Wolff & Co., Ltd.</u>, 484 U.S. 97, 104, 108 S. Ct. 404, 409 (1987); <u>see</u> <u>also</u> <u>ESAB Grp., Inc. v. Centricut, Inc.</u>, 126 F.3d 617, 620 (4th Cir. 1997) ("a federal court's exercise of jurisdiction over a person is closely linked to effective service of process."). "Thus, before a court may exercise personal

jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons." Omni Capital, 484 U.S. at 104, 108 S. Ct. at 409.

Rule 4 of the Federal Rules of Civil Procedure sets forth the formal requirements for the issuance of a summons and for service of process in proceedings brought in federal court. Fed. R. Civ. P. 4. Pursuant to Rule 4(m), the Court must dismiss an action without prejudice or order that service occur within a specified time as to any defendant who is not served within 90 days after the filing of the complaint. Fed. R. Civ. P. 4(m). Where a plaintiff can show good cause for the failure to timely serve a defendant, the Court must extend the time for service for an appropriate period. Fed. R. Civ. P. 4(m).

A plaintiff may perfect service on an individual in one of several ways. Fed. R. Civ. P. 4(e). First, a plaintiff may follow state law for the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1). Second, a plaintiff may deliver a copy of the summons and the complaint to the individual personally. Fed. R. Civ. P. 4(e)(2)(A). Third, a plaintiff may leave a copy of the summons and complaint at the individual's dwelling or usual place of abode with an individual of suitable age and discretion who resides at the dwelling place. Fed. R.

Civ. P. 4(e)(2)(B).  Fourth, a plaintiff may deliver a copy of the summons and complaint to an agent authorized to accept service of process for the individual. Fed. R. Civ. P. 4(e)(2)(C).

Defendants contend that Plaintiff has failed to properly perfect service on Defendant Byers.  Defendant Byers was served with the Summons and a copy of the Complaint in this matter on June 15, 2016, by Deputy Dwight Fitch with the Cleveland County Sheriff's Office.  (Byers Decl. ¶ 2.)  Defendant Byers was served with the Summons a second time on August 31, 2016, by Deputy Roy Dyer with the Cleveland County Sheriff's Office.  (Ex. 1 to Pl.'s Resp. to Defs.' Mot. Dismiss, ECF No. 12-1.)   Defendants contend that neither of these attempts at service was proper because N.C. Gen. Stat. § 162-16 requires that the coroner serve a sheriff's deputy.  Plaintiff contends that N.C. Gen. Stat. § 162-16 applies only to current deputies, not former deputies.

Pursuant to North Carolina law, when a sheriff is a party to the action, the coroner is bound to serve or execute any summons.  N. C. Gen. State. § 162-16. Similarly, Rule 4 provides that service may be accomplished by any person over the age of 18 who is <u>not</u> a party to the action.  Fed. R. Civ. P. 4(C)(2).  The question in this case, therefore, is not whether N.C. Gen. Stat. § 162-16 applies to former deputies, but whether the sheriff is a party to the action.  If so, then Rule 4 and

North Carolina law provide that a plaintiff may not perfect service by having a sheriff's deputy serve any of the defendants.  See N.C. Gen. Stat. § 162-16; Fed. R. Civ. P. 4(c)(2); Dalenko v. Stephens, No. 5:12-CV-122-F, 2013 WL 3288376, at *3 (E.D.N.C. Jun. 28, 2013) (unpublished).

The Amended Complaint asserts claims against the Sheriff of Cleveland County in his official capacity and against Sergeant Fitch and Defendant Byers in their official capacity.  Because the Sheriff of Cleveland County is a party to this action, his deputies may not perfect service of process on any of the defendants in this action, irrespective of whether such defendants are current or former deputies. Accordingly, the Court finds that Plaintiff failed to properly perfect service of process on Defendant Byers.  Pursuant to Rule 4, the Court must either recommend that the District Court dismiss without prejudice the claims against Defendant Byers or order additional time for Plaintiff to perfect service. Fed. R. Civ. P. 4(m).

Based on the record before the Court, and consistent with the general policy in this Circuit of deciding cases on their merits, see Herbert v. Saffell, 877 F. 2d 267, 269 (4th Cir. 1989), the Court finds that dismissal of the claims against Defendant Byers is not warranted at this time, and the District Court should allow Plaintiff additional time to perfect service on Defendant Byers.[2]  Two different

---

2   Although not set forth in a separate motion, Plaintiff requests that if the Court finds that service was not proper that the Court provide him with an extension of time to perfect service.

sheriff's deputies served Defendant Byers.  Counsel for Plaintiff tried to get the

coroner to serve Defendant Byers, but the coroner used a sheriff's deputy to perfect

service.  Even counsel for Defendants acknowledges the reasonable efforts made by

counsel for Plaintiff to perfect service in this case.  Upon a review of the record, the

Court finds that extending the time for Plaintiff to perfect service pursuant to Rule

4(m) is the appropriate remedy, not dismissal.  The Court **RECOMMENDS** that

the District Court **DENY without prejudice** the Motion to Dismiss for failure to

perfect service on Defendant Byers and grant Plaintiff an additional sixty (60) days

to perfect service.

### C.    The Section 1983 Claims Based on the Alleged Unlawful Seizure

#### 1.    Heck v. Humphrey

Plaintiff asserts Section 1983 claims against Defendants Byers and Fitch for

an unlawful seizure in violation of the Fourth Amendment to the United States

Constitution.[3]  In short, Plaintiff contends that by detaining him at the scene of the

traffic stop and not letting him leave or approach his vehicle after the termination of

the stop, Defendants Byers and Fitch violated his Fourth Amendment right to be

---

3   Although Plaintiff pled his Section 1983 claim as false imprisonment, the claim is cognizable as an unlawful
seizure in violation of the Fourth Amendment. See Brower v. Cty. of Inyo, 489 U.S. 593, 598-99, 109 S. Ct. 1378,
1382-83 (1989) (recognizing the possibility of a Section 1983 claim based upon an unreasonable seizure under the
Fourth Amendment); United States v. Weaver, 282 F.3d 302, 309-10 (4th Cir. 2002) ("Generally speaking, a
"seizure" warranting protection of the Fourth Amendment occurs when, in view of the totality of the circumstances
surrounding the "stop," a reasonable person would not feel free to leave or otherwise terminate the encounter.").

free from unreasonable seizures.  Defendants contend that this Section 1983 claim

is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).

In Heck, the United States Supreme Court addressed the interplay between a

Section 1983 claim for damages and post-conviction review pursuant to federal

habeas corpus or state post-conviction relief.  See Griffin v. Baltimore Police

Dep't, 894 F.3d 692 (4th Cir. 2015).   The Supreme Court held in Heck that:

> We hold that, in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence has been reversed on
> direct appeal, expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination, or called into question
> by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §
> 2254. A claim for damages bearing that relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under § 1983.
> Thus, when a state prisoner seeks damages in a § 1983 suit, the district
> court must consider whether a judgment in favor of the plaintiff would
> necessarily imply the invalidity of his conviction or sentence; if it would,
> the complaint must be dismissed unless the plaintiff can demonstrate
> that the conviction or sentence has already been invalidated. But if the
> district court determines that the plaintiff's action, even if successful,
> will not demonstrate the invalidity of any outstanding criminal judgment
> against the plaintiff, the action should be allowed to proceed, in the
> absence of some other bar to the suit

512 U.S. at 486-87, 114 S. Ct. at 2372-73.

In order for Heck to bar a Section 1983 claim two requirements must be met.

Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015).  First, a

judgement in favor of the plaintiff on the Section 1983 claim must "necessarily

imply the invalidity of his conviction or sentence." <u>Heck</u>, 512 U.S. at 487, 114 S. Ct. at 2372. Second, the plaintiff must either be currently in custody or have completed his sentence but could not have practically sought habeas relief while in custody. <u>Griffin</u>, 804 F.3d at 696-97 ("A would-be plaintiff who is no longer in custody may bring a § 1983 claim undermining the validity of a prior conviction only if he lacked access to federal habeas corpus while in custody."); <u>Covey</u>, 777 F.3d at 197. A plaintiff who is currently serving a term of probation satisfies the in custody requirement. <u>See</u> <u>Bishop v. Cty. of Macon</u>, 484 F. App'x 753, 755 (4th Cir. 2012) (unpublished); <u>Saunders v. Jones</u>, Civil Action No. 3:12CV192-HEH, 2014 WL 2155342, at * 4 (E.D. Va. May 22, 2014) (unpublished).

Here, Defendants contend that <u>Heck</u> bars Plaintiff's Section 1983 claim because a judgment in Plaintiff's favor would necessarily imply the invalidity of his conviction. Specifically, Defendants contend that the discovery of the cocaine and marijuana that led to Plaintiff's state court convictions were contained in the black bag that Plaintiff grabbed when he reached through the window of his vehicle. Because the discovery of the contents of the bag occurred after Plaintiff contends the traffic stop ceased, Defendants argue that a finding for Plaintiff would invalidate his conviction.

As the Fourth Circuit has explained, however, a Section 1983 claim "does not

necessarily imply the invalidity of a conviction or sentence if: (1) the conviction derives from a guilty plea rather than a verdict obtained with unlawfully obtained evidence and (2) the plaintiff does not plead facts inconsistent with guilt." Covey, 777 F.3d at 197. Other Circuits have similarly held that when a conviction results from a guilty plea rather than a verdict obtained through the introduction of the allegedly illegal evidence, Heck does not bar the Section 1983 claim because the conviction does not depend upon the legality of the search or seizure. See Lockett v. Ericson, 656 F.3d 892, 896-97 (9th Cir. 2011); Rollins v. Willett, 770 F.3d 575, 576 (7th Cir. 2014). As Judge Posner explained in Rollins:

> This case is different. Rollins pleaded guilty. There isn't any doubt that he was guilty—that he'd been driving on a suspended or revoked license. If he can prove that the action of the police in forcing him to get back in his car and show them his driving papers was unconstitutional, that cannot change the fact that he was driving without a valid license. Illegal searches and seizures frequently turn up irrefutable evidence of guilt. The evidence can be suppressed if the government attempts to present it at trial, but there was no trial. A finding that the defendant was illegally seized—the finding he seeks in this suit—would therefore have no relevance to the validity of his guilty plea and ensuing conviction.

770 F.3d at 576.

Here, Plaintiff pled guilty to possession of marijuana and cocaine with intent to manufacture, sell or deliver a controlled substance. There was no trial in which the allegedly illegally seized evidence was introduced. Thus, a finding that Plaintiff was subject to an unlawful seizure when Defendants detained him after the

completion of the traffic stop would have no relation to the validity of his guilty plea and conviction.  Because a judgment on the Section 1983 claim in Plaintiff's favor would not necessarily imply the invalidity of his conviction, <u>Heck</u> is not a bar to Plaintiff's Section 1983 Claim.   The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss as to Defendants' contention that the Section 1983 claim is barred by <u>Heck</u>.

### 2. <u>Qualified Immunity</u>

Qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982); <u>Messerschmidt v. Millender</u>, ___ U.S. ___, 132 S. Ct. 1235, 1244 (2012).  "In determining whether a defendant is entitled to qualified immunity, a court must decide (1) whether the defendant has violated a constitutional right of the plaintiff and (2) whether that right was clearly established at the time of the alleged misconduct." <u>Bland v. Roberts</u>, 730 F.3d 368, 389 (4th Cir. 2013). Accordingly, the Court first must determine whether, based on the factual allegations in the Amended Complaint, Defendants Byers and Fitch violated a constitutional right. <u>Henry v. Purnell</u>, 501 F.3d 374, 377 (4th Cir. 2007).  If no

constitutional violation occurred, then Defendants are entitled to qualified immunity and the Court need not continue its analysis.  Id.  If, however, Plaintiff properly alleges a constitutional violation, the Court must determine whether the constitutional right violated was clearly established at the time.  Id.

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend 4.  A traffic stop constitutes a seizure of the driver under the Fourth Amendment.   United States v. Guijon-Ortiz, 660 F.3d 757, 764 (4th Cir. 2011).   In order to comply with the requirements of the Fourth Amendment, the stop must be reasonable under the circumstances.  United States v. Palmer, 820 F.3d 640, 648 (4th Cir. 2016); United States v. Williams, 808 F.3d 238, 245 (4th Cir. 2015).   Courts analyze the constitutionality of a traffic stop under the two prong standard the United States Supreme Court set forth in Terry v. Ohio, 292 U.S. 1, 88 S. Ct. 1868 (1968).  Williams, 808 F.3d at 245.

The Court must first determine whether the officer's articulated basis for the stop was legitimate.  Id.  In addressing this first prong, the Court does not discern the subjective intent of the officer for stopping the vehicle.  Palmer, 820 F.3d at

649.  Rather, the Court looks to whether the circumstances, when viewed

objectively, justified the action of the officer in stopping the vehicle.  Id.

Second, the Court examines whether the actions of the officer during the

traffic stop were reasonably related in scope to the basis of the seizure.  Williams,

808 F.3d at 245.

> *Terry's* second prong restricts the range of permissible actions that a
> police officer may take after initiating a traffic stop. An officer is entitled
> to conduct safety-related checks that do not bear directly on the reasons
> for the stop, such as requesting a driver's license and vehicle registration,
> or checking for criminal records and outstanding arrest warrants. *See*
> *Rodriguez v. United States*, ___U.S. ___, ___ _ ___, 135 S. Ct. 1609,
> 1615–16, 191 L.Ed.2d 492 (2015). Generally, however, an officer's
> focus must remain on the bases for the traffic stop, in that the stop must
> be "sufficiently limited in scope and duration to satisfy the conditions of
> an investigative seizure." *See United States v. Guijon–Ortiz*, 660 F.3d
> 757, 764 (4th Cir.2011) (internal quotation marks omitted).

Palmer, 820 F.3d at 648.  For example, an officer may require the driver of a

lawfully stopped vehicle to exit the vehicle in order to protect the safety of the

officer.  See United States v. Sakyi, 160 F.3d 164, 167 (4th Cir. 1998); United

States v. Stanfield, 109 F.3d 976, 977 (4th Cir. 1997).

A legitimate traffic stop, however, may become unlawful if the officer

extends the stop beyond the time reasonably required to complete the stop's initial

objective, and the officer may not investigate a matter outside the scope of the

initial stop unless the officer receives the consent of the driver or "develops

reasonable, articulable suspicion of ongoing criminal activity." Palmer, 820 F.3d at

649. This includes extending a completed traffic stop to conduct a dog sniff of the

vehicle. Williams, 808 F.3d at 245.

As the United States Court of Appeals for the Fourth Circuit has recently

explained:

> Reasonable suspicion is a "commonsense, nontechnical" standard that
> relies on the judgment of experienced law enforcement officers, "not
> legal technicians." *See Ornelas v. United States*, 517 U.S. 690, 695, 116
> S. Ct. 1657, 134 L.Ed.2d 911 (1996) (internal quotation marks omitted).
> To support a finding of reasonable suspicion, we require the detaining
> officer "to either articulate why a particular behavior is suspicious or
> logically demonstrate, given the surrounding circumstances, that the
> behavior is likely to be indicative of some more sinister activity than
> may appear at first glance." *See United States v. Foster*, 634 F.3d 243,
> 248 (4th Cir.2011).

> Under the applicable principles, the relevant facts articulated by the
> officers and found by the trial court, after an appropriate hearing, must
> "in their totality serve to eliminate a substantial portion of innocent
> travelers." *See United States v. McCoy*, 513 F.3d 405, 413 (4th
> Cir.2008). As our McCoy decision explained, however, each articulated
> fact need not "on its own eliminate every innocent traveler." *Id.* Rather,
> we "must look at the totality of the circumstances of each case to see
> whether the detaining officer has a particularized and objective basis for
> suspecting legal wrongdoing." *See United States v. Arvizu*, 534 U.S.
> 266, 273, 122 S. Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotation
> marks omitted).

Williams, 808 F.3d at 246; see also Palmer, 820 F.3d at 650. Prior to conducting an

actual search of the vehicle, and absent consent or a warrant, the officer must

develop probable cause to believe that the vehicle contains evidence of criminal activity. Palmer, 820 F.3d at 650.

The Amended Complaint contains factual allegations supporting a violation of the Fourth Amendment.[4] Plaintiff has pled sufficient factual allegations demonstrating that a lawful traffic stop became an unlawful seizure when the officers extended the stop beyond the time reasonably required to complete its initial objective - issuing a citation for the failure to stop at a stop sign. When Defendant Fitch issued the citation to Plaintiff and returned his license, the lawful traffic stop ceased. At this point the officers could only detain Plaintiff and continue his seizure to investigate a matter outside the scope of the initial stop if they received plaintiff's consent or "develop[ed] reasonable, articulable suspicion of ongoing criminal activity." Palmer, 820 F.3d at 649. Plaintiff, however, refused to consent to a search of his vehicle and the Amended Complaint is devoid of any facts from which the Court could find that the officers had reasonable suspicion of ongoing criminal activity to justify Plaintiff's continued detention. Moreover, under the totality of the circumstances, a reasonable person in Plaintiff's position would not have felt free to leave and terminate the traffic stop after being directed by Sergeant Fitch to stay away from his vehicle and to stand besides Deputy Byers.

---

4 The Court notes that Defendants do not challenge the fact that Plaintiff has properly alleged a constitutional violation. Rather, Defendants contend that the constitutional right was not clearly established at the time.

Thus, the stop did not transition into a voluntary encounter.  See United States v. Weaver, 282 F.3d 302, 309-10 (4th Cir. 2002) ("Generally speaking, a "seizure" warranting protection of the Fourth Amendment occurs when, in view of the totality of the circumstances surrounding the "stop," a reasonable person would not feel free to leave or otherwise terminate the encounter.").  The Court finds that the Amended Complaint sufficiently alleges a constitutional violation and, thus, the Court must determine whether that right was clearly established at the time.

The pertinent question for the Court is whether the law related to unlawful seizure was clearly established on June 7, 2013, the date Defendants detained Plaintiff after concluding the traffic stop in order to await the arrival of a K-9 unit to conduct a dog sniff of the vehicle for drugs.  Defendants contends that the law was not clearly established until 2015, when the United States Supreme Court decided Rodriquez v. U.S., ___U.S. ___, 135 S. Ct. 1609 (2015).  In Rodriquez, the Supreme Court held:

> This case presents the question whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop. We hold that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation. Id., at 407, 125 S. Ct. 834.

135 S. Ct. at 1612.  In Rodriquez, the Supreme Court vacated and remanded the

decision of the United States Court of Appeals for the Eighth Circuit, which had

relied upon a *de minimis* rule to find that prolonging the traffic stop to conduct a

dog sniff did not violate the Fourth Amendment.  Id. at 1615-17.

As a threshold matter, the Court notes that the general law regarding the

allowable scope and duration of a seizure in the context of a traffic stop was clearly

established when Defendant Fitch initiated the traffic stop in this case.  See e.g.

U.S. v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011).  As the Fourth Circuit

explained in Digiovanni, "[i]f a police officer seeks to prolong a traffic stop to

allow for investigation into a matter outside the scope of the initial stop, he must

possess reasonable suspicion or receive the driver's consent."  Id.

The Fourth Circuit, however, had also clearly recognized that certain delays

were *de minimis* and, thus, did not run afoul of the Fourth Amendment.  Id. at 509.

"[W]here a delay can be characterized as *de minimis* under the totality of the

circumstances, it will not be recognized as a Fourth Amendment Violation."   Like

the Eighth Circuit prior to Rodriquez, the Fourth Circuit had also recognized that a

delay caused by a dog sniff could constitute a *de minimis* delay that would not

violate the Fourth Amendment.  United States v. Farrior, 553 F.3d 210, 220 (4th

Cir. 2008) ("we conclude that any delay in conducting the first drug-dog sniff

amounted to a *de minimis* intrusion of Farrior's liberty interest.  Thus, it was not

unreasonable as a violation of his Fourth Amendment rights."); <u>see</u> <u>also</u> <u>United</u> <u>States v. Guijon-Ortiz</u>, 660 F.3d 757, 767 (4th Cir. 2011).

Defendants are correct that the law as set forth by the Supreme Court in <u>Rodriquez</u> that a delay caused by a dog sniff after the completion of a traffic stop violates the Fourth Amendment and cannot constitute a *de minimis* intrusion was not clearly established at the time of the traffic stop in this case.  This fact, however, does not end the inquiry.   At the time of the stop in question, the clearly established law in the Fourth Circuit was that certain delays resulting in an extended seizure for purposes unrelated to the traffic stop – including a dog sniff - could be characterized as *de minimis* under the totality of the circumstances.  <u>Digiovanni</u>, 650 F.3d at 509.  "[U]ltimately the reasonableness of an extended seizure for an unrelated investigation is evaluated under the totality of the circumstances."  <u>Guijon-Ortiz</u>, 660 F.3d at 767.  Thus, the question for the Court is a much more fact intensive one than is reflected in the parties' briefs.  For example, while qualified immunity would likely apply to a situation where a dog sniff in 2013 occurred two minutes after the completion of the traffic stop and lasted for only 1 minute, qualified immunity would likely not apply to a situation where officers detained a driver for forty-five minutes after the completion of the traffic stop to await for a K-9 officer to arrive on the scene.  Put another way, a reasonable officer should have

known that a forty-five minute delay would violate a clearly established constitutional right.  See generally Rowland v. Perry, 41 F.3d 167, 172 (4th Cir. 1994) ("The law thus shields police officers from civil liability unless the officer reasonably should have known that his actions violated clearly established constitutional rights.").  Here, there are simply not enough facts in the record for the Court to make a determination regarding whether the legal right was clearly established.   Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss based on the application of qualified immunity to the Section 1983 claim for an unlawful seizure.  Defendants may renew their request for qualified immunity at the summary judgment stage.

### D.  The Section 1983 Excessive Force Claim

Defendant Fitch also asserts qualified immunity as to the Section 1983 claim based on the alleged use of excessive force.  Plaintiff contends that Defendant Fitch is not entitled to qualified immunity. Defendant Byers does not contend that qualified immunity as to the Section 1983 excessive force claim asserted against him is appropriate at the Rule 12 stage.

The Fourth Amendment protects an individual from a seizure effectuated by excessive force.  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011).  "Whether an officer has used excessive force is analyzed under a standard of objective

reasonableness." Id. Courts must look at whether an officer's actions were objectively reasonable in light of all the facts and circumstances confronting the officer at the moment he or she employed the use of force. Id. "The inquiry on qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994). The subjective intent or underlying motivation of the officer for using force is immaterial. Henry, 652 F.3d at 531; Rowland, 41 F.3d at 173.

Accepting all the factual allegations in the Amended Complaint as true and construing them in the light most favorable to Plaintiff, the Court finds that Defendant Fitch is entitled to qualified immunity on the excessive force claim. After issuing Plaintiff a traffic citation, Sergeant Fitch instructed Plaintiff that he could not return to his vehicle and to stand besides Defendant Byers. When Sergeant Fitch walked towards his patrol car to retrieve a cell phone, Plaintiff moved towards Plaintiff's vehicle, leaned into the driver's side window, and grabbed a black bag located in the middle console area. As he was leaning through the window, Sergeant Fitch grabbed Plaintiff from behind and tried to pull Plaintiff out of the window and wrestle him to the ground. When Plaintiff pulled away from Sergeant Fitch's grasp, Sergeant Fitch pulled Plaintiff's shirt over Plaintiff's head.

This is the full extent of the force allegedly used by Sergeant Fitch in an attempt to restrain Plaintiff and remove him from the car window. Plaintiff does not allege that he was injured in any way from any of the actions taken by Sergeant Fitch.[5]

Any reasonable officer confronted with the situation faced by Sergeant Fitch would have believed that the level of force he used was reasonable and appropriate under the circumstances. There is no question that a reasonable officer could have believed that the use of force to grab Plaintiff from behind and subdue him while he was leaning through the window and grabbing a bag and then pulling Plaintiff's shirt over his head when he tried to escape the officer's grasp was objectively reasonable in light of the circumstances.[6] Finally, Plaintiff cannot establish an excessive force claim based merely on the alleged unlawful detention and/or arrest of Plaintiff. See Velazquez v. City of Long Beach, 793 F.3d 1010, 1024 (9th Cir. 2015); Hogan v. Cunningham, 722 F.3d 725, 733 (5th Cir. 2013); Snell v. City of New York, 564 F.3d 659, 672-73 (3rd Cir. 2009); Cortez v. McCauley, 478 F.3d 1108, 1126 (10th Cir. 2007); Bashir v. Rockdale Cty., Ga., 445 F.3d 1323, 1331-32 (11th Cir. 2006). Accordingly, the Court finds that Defendant Fitch is entitled to qualified immunity on the excess force claim. The Court **RECOMMENDS** that

---

5  The injuries sustained by Plaintiff were the result of being shot by Defendant Byers. (Pl.'s Am. Compl. ¶¶ 40-41.)
6  The Court notes that in response to the Motion to Dismiss filed by Defendants, Plaintiff failed to point this Court to any case law or legal authority to contest Defendants' argument that Defendant Fitch is entitled to qualified immunity on the Section 1983 excessive force claim.

the District Court **GRANT** the Motion to Dismiss as to the Section 1983 claim for excessive force asserted against Defendant Fitch.

### E. The State Law Claims Against Ascension Insurance Agency, Inc.

The Eighth Cause of Action in the Amended Complaint asserts an action of Sheriff's Bond pursuant to N.C. Gen. Stat. § 58-76-5, against Defendant Ascension Insurance Agency, Inc. ("Ascension"). N.C. Gen. Stat. § 58-76-5 provides that "[e]very person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . other officer, may institute a suit or suits against said officer . . . and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State . . . . Defendants contend that Defendant Ascension should be dismissed from this case because it is not the surety. Rather, Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), as demonstrated by the Sheriff's bond attached to Defendants' Motion to Dismiss, is the surety for the Sheriff of Cleveland County. (Ex. 5 to Defs' Mot. Dismiss, ECF No. 8-6.) In response to the Motion to Dismiss, Plaintiff does not contest the fact that Defendant Ascension is not the surety and does not offer any argument for why the Court should not dismiss Ascension as a defendant in this matter. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss as to Defendant Ascension and **DISMISS** the claims asserted against Defendant

Ascension.

### F.  The State Law Claims Against Liberty Mutual Insurance Company

The Eighth Cause of Action in the Amended Complaint also asserts an action of Sheriff's Bond pursuant to N.C. Gen. Stat. § 58-76-5, against Defendant Liberty Mutual.  Claims upon an official bond of a public officer are subject to a three year statute of limitations in North Carolina.  N. C. Gen. Stat. § 1-52(1a).   Plaintiff filed his Complaint in this matter on June 6, 2016.  The Complaint, however, did not name Liberty Mutual as a defendant.  Plaintiff filed the Amended Complaint naming Liberty Mutual as a party to the action on July 15, 2016.  Plaintiff concedes that it added Liberty Mutual as a party after the expiration of the applicable three year statute of limitation but contends that the claim against Liberty Mutual relates back to the date of the original Complaint.  In addition, Plaintiff contends that Defendants are barred by the doctrine of equitable estoppel from raising the statute of limitations as a defense.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, an amended complaint may relate back to the date of the original complaint in certain circumstances.  Fed. R. Civ. P. 15(c)(1); see also See Wilkins v. Montgomery, 751 F.3d 214, 223 (4th Cir. 2014); Robinson v. Clipse, 602 F.3d 605, 607-08 (4th Cir. 2010).  Rule 15(c)(1) provides that

**(c) Relation Back of Amendments.**

**(1) When an Amendment Relates Back**. An amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i)     received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Where a plaintiff seeks to add a defendant by amending the complaint, the focus is on the notice to the individual or entity the plaintiff seeks to add.  Wilkins, 751 F.3d at 224.  As the Fourth Circuit has recently explained:

> Specifically, as to Rule 15(c)(1)(C)(ii), the Supreme Court has clarified, "The question  . . . is not whether the [amending party] knew or should have known the identity of  . . . the proper defendant, but whether [the potential defendant] knew or should have known that it would have been named as a defendant but for an error."  Krupki v. Costa Crociere, 560 U.S. 538, 548, 130 S. Ct. 2485, 117 L.E.2d 48 (2010).

Id.

As a threshold matter, there is no question that the Amended Complaint satisfied the initial requirements of Rule 15(c)(1)(B) that the claims against Liberty Mutual arise out of the conduct, transaction, or occurrence set out in the original Complaint. The Amended Complaint sought only to add Liberty Mutual as the proper defendant pursuant to N.C. Gen. Stat. § 58-76-5. Moreover, it is clear from the record that Liberty Mutual received notice of the action within the time provided by Rule 4(m) for perfecting service and, thus, would not be prejudiced in defending this case on the merits. See Fed R. Civ. P. 15(c)(1)(C); Wilkins, 751 F.3d at 224-5; Robinson, 602 F.3d at 608-09. In fact, had Plaintiff named Liberty Mutual in the original Complaint, Liberty Mutual would be in the same position it is in now. See Robinson, 602 F.3d at 609.

Finally, Liberty Mutual knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against it in the original Complaint. See Fed R. Civ. P. 15(c)(1)(C)(ii); Robinson, 602 F.3d at 609. As the Fourth Circuit explained in Robinson:

> In *Goodman v. Praxair, Inc.,* this Court rejected formalism in evaluating "mistake" under Rule 15(c). 494 F.3d 458, 470-71 (4th Cir. 2007). Rather than focusing on the reason behind a plaintiff's mistake, we found that "[t]he 'mistake' language is textually limited to describing

*the notice* that the new party had, requiring that the new party have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place." Id.at 471 (emphasis added).

602 F.3d at 609-10.  Here, Liberty Mutual knew or should have known that it was the party Plaintiff intended to sue in the original Complaint - not Ascension Insurance Agency - since it was the actual party that had issued the Sheriff's bond at issue.  This was not a situation where Plaintiff deliberately chose to sue one party over another with full understanding of the factual and legal differences between the parties, but, rather, where Plaintiff erroneously believed that Ascension Insurance Agency was the proper defendant.  See Krupski v. Costa Crociere, 560 U.S. 538, 548-49, 130 S. Ct. 2485, 2493-94 (2010).  Here, Plaintiff clearly made a mistake as to the identity of the party who issued the Sheriff's bond.  See Id. at 548, 130 S. Ct. at 2494 ("That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B.").[7]

Defendants' suggestion that Plaintiff did not in fact make a "mistake"

_____

7  The Court notes that the quoted language on page 21 of Defendants' brief is actually taken from a quote from the United States Court of Appeals for the Seventh Circuit in Wood v. Woracheck, 618 F.2d 1225, 1230 (7th Cir. 1980) contained in the decision of the Fourth Circuit.  See Western Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1201 (4th Cir. 1989).  The Court will assume that the citation and use of the quotations in the brief was by mistake and not an attempt to intentionally mislead this Court.

because the identity of the Sheriff's surety is public information available in the superior court, misconstrues the analysis undertaken under Rule 15(c). As the Supreme Court explained in Krupski:

> We disagree, however, with respondent's position that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake. **The reasonableness of the mistake is not itself at issue.** As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

560 U.S. at 549, 130 S. Ct. at 2494 (emphasis added). The fact Plaintiff could have confirmed the Sheriff's surety goes to the reasonableness of the mistake; it does not change the fact that Plaintiff mistakenly believed that Ascension was the proper party based on the representations by Cleveland County. And were it not for the mistake of Plaintiff in believing that Ascension was the proper defendant, Plaintiff would have named Liberty Mutual in the original Complaint. Because Plaintiff has satisfied the requirements of Rule 15, the Court finds that the addition of Liberty Mutual relates back to the date of the original Complaint. The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss as to the claims asserted against Liberty Mutual.

## G. The Remaining State Law Claims Against Defendants Fitch and Byers

The Amended Complaint also asserts a number of state law claims. Defendants move to dismiss these claims for a variety of reasons. It appears from the briefs that the parties agree on several of these claims. The Court will briefly address each of the arguments raised.

To the extent that Defendants move to dismiss the state law claims of false imprisonment, willful and wanton negligence, and negligence based on a finding that Defendants are entitled to qualified immunity on the Section 1983 claim for an unlawful seizure under the Fourth Amendment, the motion is subject to denial based on this Court's recommendation that the District Court find that Defendants are not entitled to qualified immunity at this time. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss as to the state law claims for false imprisonment, willful and wanton negligence, and negligence.[8]

Defendants also contend that a finding that Defendant Fitch is subject to qualified immunity on the excess force claim is fatal to the state law assault and battery claim. Plaintiff concedes that the claim is barred if the Court finds that

_____

8   The Court notes that in a cursory one sentence footnote Defendants also contend that the individual capacity claims are subject to dismissal. Defendants, however, must set forth a more developed legal argument to this Court before this Court will recommend the dismissal of a claim to the District Court. Thus, the Court makes no finding as to whether the individual capacity negligence claims are properly pled.

Defendant Fitch is entitled to qualified immunity. (Pl.'s Resp. to Defs.' Mot. Dismiss at 15, ECF No. 12.) Based on the Court's determination that Defendant Fitch is entitled to qualified immunity on the excess force claim and Plaintiff's statement that he does not dispute that the claim is subject to dismissal if the Court finds that qualified immunity is warranted, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss and Dismiss the state law assault and battery claim against Defendant Fitch.

The Sixth Cause of Action asserts a Substantive Due Process claim under the North Carolina Constitution. Plaintiff asserts this claim in the alternative to the extent that the Court finds that Defendants are entitled to immunity from suit as to the state law claims. Although a plaintiff may not assert a state constitutional claim when he or she has an adequate remedy at state law, an otherwise adequate remedy at law may be precluded by the application of the doctrine of sovereign immunity. Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ., 678 S.E.2d 351, 356-67 (N.C. 2009). The cursory argument offered by the parties is simply insufficient for this Court to make a determination at this time as to whether Plaintiff has an adequate remedy under state law. The Court **RECOMMENDS** that the District Court **DENY without prejudice** the Motion to Dismiss the claim under the North Carolina Constitution. The Court notes, however, that if the state law claims are not

subject to sovereign immunity, then Defendants would be entitled to dismissal of this claim.

Finally, Defendants move to dismiss the state law claims against Sheriff Norman on the ground that if the Court dismisses all the claims against Defendants Fitch and Byers, the claims against Sheriff Norman are subject to dismissal. Because the Court has not recommended the dismissal of all the claims against Defendants Fitch and Byers, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss as to the state law claims against Sheriff Norman.

## IV.  CONCLUSION

The Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the Motion to Dismiss [#8].  The Court **RECOMMENDS** that the District Court **GRANT** the motion and **DISMISS** the:

(1) Section 1983 claims against Sheriff Norman and the official capacity Section 1983 claims against Defendants Byers and Fitch, without prejudice;

(2) the Section 1983 claim for excessive force asserted against Defendant Fitch;

(3) the claims asserted against Defendant Ascension; and

(4) the state law assault and battery claim against Defendant Fitch.

The Court **RECOMMENDS** that the District Court **DISMISS** Defendant

Ascension Insurance Agency, Inc. as a Defendant in this action.   As to the

remaining claims, the Court **RECOMMEND**S that the District Court **DENY** or

**DENY without prejudice** the Motion to Dismiss consistent with this Memorandum

and Recommendation.  Finally, the Court **RECOMMENDS** that the District Court

provide Plaintiff with an additional sixty (60) days to perfect service of process as

to Defendant Byers.

Signed: February 1, 2017

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).